**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL D. GROSS**
Lebanon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MAXWELL SWISHER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 06A04-1304-CR-173 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BOONE SUPERIOR COURT
The Honorable Matthew C. Kincaid, Judge
Cause No. 06D01-1112-FD-474

**December 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Maxwell Swisher ("Swisher") appeals his conviction, following a bench trial, for Class A misdemeanor domestic battery.[1]

We affirm.

## ISSUE

Whether sufficient evidence supports Swisher's conviction.

## FACTS

The facts most favorable to the verdict reveal that in December 2011, Swisher, his girlfriend, Debra Thobhani ("Thobhani"), and their two-year-old son, T.S., were living with Swisher's mother, Tammy Garding ("Garding") and her husband in Boone County. Swisher's other son and younger sisters also lived at Garding's house. During the evening hours of December 16, 2011, Jamestown Police Officer Larry Bewley ("Officer Bewley") was dispatched to Garding's house on a domestic disturbance call after Garding called 911 to request that a police officer be sent to her house. Garding told the dispatcher that "her son" was "hitting on his girlfriend" and reported that Swisher was "physically" fighting with Thobhani and that she saw Thobhani "flat on her back on the porch." (State's Ex. 1). While Garding was talking to the dispatcher, she stated that her two-year-old grandson had just thrown up because he was "so upset over this." (State's Ex. 1). Garding then called the 911 operator back a second time to inform the dispatcher that Swisher had left the scene in a 2003 silver Taurus SES. When Garding was on the

---

[1] Ind. Code § 35-42-2-1.3(a).

phone with the dispatcher, she confirmed that Swisher had hurt Thobhani and that Thobhani had marks on her.

When Officer Bewley arrived on the scene, he noticed that Thobhani was "very upset" and that she had "some marks on her neck that [he] could obviously see." (Tr. 8). Thobhani also showed Officer Bewley that she had additional injuries, including scrapes on her leg and lower back. Officer Bewley took photographs of Thobhani's injuries and of a broken chair on the front porch. Thobhani completed a voluntary written statement, which provided:

> My boyfriend, Maxwell Swisher, came into the kitchen where I was talking to Tammy Garding, his mother. He then proceeds to get right up in my face, nose-to-nose, and yells obscenities and other profanities at me. The argument then moves into [Garding's] bedroom where he the[n] pins me to the bed and continues to yell at me, and raises his fist to hit me. I then go outside to get away from him. I then open the door back up [be]cause I hear my son crying, he then pushes me out the door, shoves me down onto a plastic deck chair, which breaks, then continues to hold me down onto it, took my cigarette from my hand and burns me on the neck with it, he then also proceeds to go to kick and hit me. That is when his mother and stepfather, and the kids came outside. ALL of this took place in front of the children [ages 13, 10, 6, and 2].

(State's Exhibit 4). While Thobhani was writing her statement, Officer Bewley spoke with Garding, who was also "upset." (Tr. 9). Garding also wrote out a voluntary statement, which provided:

> Max [Swisher] came into the kitchen where I, Tammy Garding, was talking to [Thobhani]. He proceeded to berate [Thobhani] and get in her face and yell and push her around. A little later I was in my bedroom when [Thobhani] came in to talk to me. [Swisher] burst in and yelled at [Thobhani] and pinned her down yelling at her. A little later I heard my grandsons screaming, so I came out to find my 2 year old grandson, T.S., screaming because [Swisher] and [Thobhani] were having a physical altercation on the porch. [Swisher] pushed [Thobhani] down and it was at

3

this time that I called the police. [Swisher] then sped off in a silver, 2003 Taurus SES.

(State's Exhibit 3). Both Thobhani and Garding returned their statements to Officer Bewley that night.

The State originally charged Swisher with Class D felony domestic battery but later amended it to Class A misdemeanor domestic battery. On March 15, 2013, the trial court held a bench trial. During the State's opening argument, the prosecutor informed the trial court that the State was planning to introduce Thobhani's and Garding's written statements from the night of the incident, which she stated were "excited utterances" and were "truthful statements" of what happened that night. (Tr. 4). The prosecutor, however, warned the trial court that she was unsure of exactly how these witnesses would testify at trial due to their relationship with Swisher and their current desire that he not get into trouble. During Swisher's opening statement, his attorney stated that Swisher's defense was that the State would not be able to present evidence to support every element of domestic battery. Swisher's attorney stated that Thobhani and Garding would testify that they had made "mistakes" and "assumptions" under the existing "hysteria" of the night and that "once it had all settled out later they realized that what they ha[d] said in their statement[s] [was]n't exactly what [had] happened." (Tr. 5).

When the State called Thobhani and Garding as witnesses to testify, they both repudiated their prior written statements. Thobhani admitted that she wrote out and signed her written statement but asserted that she wrote the allegations in the statement because she was confused, upset, and "going off of what [Garding] had stated." (Tr. 39).

4

Thobhani claimed that she never spoke to Officer Bewley and that only Garding spoke to the officer. Thobhani claimed that she and Swisher only verbally argued but that he never physically touched her in the kitchen, never pinned her down in the bedroom, and never shoved her or touched her on the porch. Instead, Thobhani maintained that she injured her leg and lower back by tripping over rollerblades and falling on and breaking the plastic chair on the front porch. Thobhani also testified that she burned her own neck with a cigarette that she was holding when she fell on the chair.

Garding also admitted that she wrote out and signed her written statement but claimed that never saw Swisher physically touch Thobhani at any point that night. Garding also admitted that she called 911 the first time but testified that she did not remember calling 911 the second time. Garding contended that she called 911 based on a "misunderstanding" and that she had "jumped to a conclusion" when she saw Thobhani lying on her back on the porch. (Tr. 17).

When the State introduced the recording of the two 911 calls (State's Exhibit 1), Garding's written statement (State's Exhibit 3), and Thobhani's written statement (State's Exhibit 4), into evidence, Swisher did not object and affirmatively stated that he had "[n]o objection" to the admission of these exhibits. (Tr. 18, 22, 38).

After the State rested, Swisher moved for a directed verdict, arguing that the State had failed to present any evidence that Swisher had touched Thobhani in a rude, insolent, or angry manner. The State argued that the written statements and 911 calls were excited utterances and were being used as substantive evidence and asserted that the trial court needed to weigh the credibility of that evidence against the witnesses' in-trial testimony.

5

The trial court denied Swisher's motion. Swisher then testified on his own behalf and stated that he yelled at Thobhani in the kitchen and bedroom and on the porch, but he testified that he did not shove or hit her. The trial court found Swisher guilty as charged. The trial court imposed a fourteen (14) day sentence in the Boone County Jail with credit for time served. Swisher now appeals his conviction.

DECISION

Swisher argues that the evidence was insufficient to support his conviction for Class A misdemeanor domestic battery.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [jury's verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original).

Indiana Code § 35-42-2-1.3(a) provides that a person commits Class A misdemeanor domestic battery when he knowingly or intentionally touches an individual with whom he has a child in common in a rude, insolent, or angry manner that results in bodily injury to that person.

6

Swisher contends that there was insufficient evidence to support the element of a rude, insolent, or angry touching because Thobhani and Garding testified that Swisher did not physically touch Thobhani. Swisher acknowledges that the evidence of the 911 call (State's Exhibit 1), Garding's written statement (State's Exhibit 3), and Thobhani's written statement (State's Exhibit 4) provides evidence that he touched Thobhani in a rude, insolent, or angry manner; however, he now contends on appeal that these exhibits were either improperly admitted into evidence or improperly used as substantive evidence. We cannot agree.

First, Swisher's contention that the evidence was insufficient because Thobhani's and Garding's in-trial testimony did not provide evidence of a physical touching is nothing more than an invitation to reweigh the evidence against their written statements and to judge the credibility of the witnesses, which we will not do. *See Drane*, 867 N.E.2d at 146. Additionally, to the extent that Swisher is attempting to challenge the admissibility of State's Exhibits 1, 3, and 4, he has waived any such appellate challenge because he did not object to the these exhibits at trial. In fact, he affirmatively stated that he had "[n]o objection" to the admission of this evidence. (Tr. 18, 22, 38). Consequently, Swisher has waived appellate review of his claim of error.[2] *See, e.g.*, *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (holding that defendant, who did not object to evidence upon introduction of evidence and who affirmatively stated he had no objection, waived review of his argument that evidence was unlawfully seized), *reh'g denied*; *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000) ("The failure to make a

___

[2] Swisher fails to acknowledge his lack of objection to the evidence he now claims was improperly admitted, and he does not argue that fundamental error occurred by the admission of this evidence.

7

contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal.").

Because there was probative and unchallenged evidence from which the trial court—as trier of fact in this bench trial—could have found that Swisher touched Thobhani in a rude, insolent, or angry manner, we affirm his conviction for Class A misdemeanor domestic battery.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.